**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Criminal Case No.: JKB-16-0485 |
| MARCUS LISBON | * | |
| *Defendant*. | * | |

\* \* \* \* \* \* \* \* \*

**MARTY IMES' MEMORANDUM OF LAW AS *AMICUS CURIAE* IN SUPPORT
OF MARCUS LISBON's ARGUMENT THAT THE CAREER OFFENDER
ENHANCEMENT OF U.S.S.G. § 4B1.1 IS INAPPLICABLE TO A
RICO CONSPIRACY CONVICTION UNDER 18 U.S.C. SECTION 1962(d)**

On 6 January 2017, Marty Imes pled guilty to Count One of the Indictment, charging him with a RICO conspiracy, in violation of 18 U.S.C. 1962(d). In the plea agreement, the parties stipulated and agreed that the applicable base offense level for sentencing would be 19, under U.S.S.G. Section 2E1.1(a)(1). The Government also agreed not to oppose a two-level reduction in offense level for acceptance of responsibility, and to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease "in recognition of [Mr. Imes'] timely notification of his intention to plead guilty."

These agreements would result in an offense level of 16, which, at Mr. Imes' criminal history category, would result in a sentence of 41-51 months.[1] However, the

---

[1] The Probation Office has calculated that Mr. Imes' criminal history score places him in criminal history category V, but takes the position that he should be sentenced as a "career offender" under U.S.S.G. § 4B1.1, which imposes a criminal history category of VI.

Probation Office takes the position that Mr. Imes' offense is a "controlled substance offense" under U.S.S.G. §4B1.1, and has recommended that Mr. Imes be sentenced as a "career offender" at an offense level of 29, resulting in a Guideline range *nine to twelve years* longer, at 151-188 months.

The United States has adopted this position with regard to several defendants in this matter, including Mr. Imes and Mr. Lisbon. Pursuant to the Court's Order of 12 June 2017, Defendant Marty Imes submits this brief *amicus curiae* in support of the position that the RICO conspiracy alleged in Count One is not a "controlled substance offense" within the meaning of U.S.S.G. §4B1.1, and that the Career Offender enhancement is inapplicable. The defendants listed below join in the arguments made in this brief. The defendants joining this brief also join in the arguments presented by Mr. Lisbon, and those presented by the Federal Public Defender as *amicus curiae*.

**I. The Court Must Use the "Categorical Approach" in Determining the Applicability of the "Career Offender" enhancement.**

To determine whether the "Career Offender" enhancement applies to Mr. Imes' conviction in this matter, the Court must determine whether the RICO conspiracy statute,18 U.S.C. § 1962(d), meets the definition of a "controlled substance offense" within the meaning of U.S.S.G. § 4B1.2. To do so, the Court must employ the "categorical approach" described in *Descamps v. United States,* 133 S. Ct. 2276, 2283 (2013); *see also United States v. Dozier*, 848 F.3d 180, 183 (4th Cir. 2017); *United States v. Medina-*

*Campo*, 714 F.3d 232, 235 (4th Cir. 2013); *Gibbs v. United States*, 3 Fed. Appx. 404, 405 (6th Cir. 2001); *United States v. Brown*, 765 F.3d 185, 188-89 (3d Cir. 2004).[2]

## II. Under the "Categorical Approach" Mr. Imes' Offense is Not a "Controlled Substance Offense."

### 1. The "Categorical Approach" Limits the Court's Analysis to the Elements of the Defendant's Conviction; It Does Not Permit an Analysis of the Particular Facts Underlying the Conviction.

The "categorical approach" was first articulated in *Taylor v. United* States, In *Taylor*, 495 U.S. 575 (1990). There, the defendant pled guilty to possession of firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).[3] Taylor had four prior convictions – two for burglary, one for robbery, and one for assault – and the government sought to enhance his sentence under the Armed Career Criminal Act ("ACCA"), which provided for such an enhancement where a defendant had "three previous convictions ... for a violent felony." 18 U.S.C. § 924(e)

The ACCA defines "violent felony" as any felony that:

"(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

"(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."

495 U.S. at 578. Taylor conceded that his prior convictions for robbery and assault were for "violent felonies" under this definition, but argued that his two previous convictions for

---

[2] Courts also apply the categorical approach to the question whether an offense is a "crime of violence" under U.S.S.G. § 4B1.2. *United States v. Royal*, 731 F.3d 333, 341-42 (4th Cir. 2013); *United States v. Hancock*, 168 F. Supp. 3d 817, 820 (D. Md. 2016); *Alvarado v. United States*, 2016 WL 6302517 (C.D. Cal. Oct. 14, 2016).

[3] In his plea, the defendant in *Taylor* reserved the right to appeal the sentence enhancement. 495 U.S. at 579.

burglary were not, because they did not involve "a serious potential risk of physical injury to another." *Id.* at 579. As a result, the *Taylor* Court was required to determine the meaning of the term "burglary" in § 924(e).

The *Taylor* Court concluded that, rather than defining the term with reference to the specific facts of a defendant's offense, Congress intended a "uniform, categorical definition" of "burglary:"

> Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions.

495 U.S. at 600. The *Taylor* Court rejected a fact-specific, non-categorical approach, because it would require courts "to engage in an elaborate factfinding process," and lead to inconsistent results: "a particular crime might sometimes count towards enhancement and sometimes not, depending on the facts of the case." The *Taylor* Court held that the "practical difficulties and potential unfairness" of effectively relitigating the defendant's prior convictions would be "daunting."

But the *Taylor* Court also recognized that a non-categorical approach would be even more problematic, because it would increase the defendant's sentence based on facts found not by a jury beyond a reasonable doubt, but by the sentencing judge. The Court asked:

> If the sentencing court were to conclude, from its own review of the record, that the defendant actually committed a generic burglary, could the defendant challenge this conclusion as abridging his right to a jury trial?

*Id.* The *Taylor* Court's concern was prescient – in a series of cases decided after *Taylor*, beginning with *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) – the Supreme Court

4

has made clear that any fact necessary to a defendant's sentence must be submitted to a jury, and proved beyond a reasonable doubt. *See also Booker v. United States,* 543 U.S. 220 (2005); *Blakely v.* Washington, 542 U.S. 296 (2004). As the Supreme Court noted in applying the categorical approach in *Descamps v. United* States, 133 S. Ct. 2276, 2288 (2013), a sentence enhancement based on a prior conviction "indisputably increases" the sentence faced by a defendant, and "would (at the least) raise serious Sixth Amendment concerns if it went beyond merely identifying a prior conviction." Thus, the categorical approach is required not only to avoid the "practical difficulties and potential unfairness" of a fact-specific analysis; it is also required in order to protect the defendant's Sixth Amendment right to trial by jury. *See Alleyne v. United States*, 133 S. Ct. 2151, 2160 (2013); *In re Gomez*, 830 F.3d 1225, 1227-28 (11th Cir. 2016); *see also Descamps*, 133 S. Ct. at 2294 (Thomas, J., concurring) ("Under the logic of *Apprendi,* a court may not find facts about a prior conviction when such findings increase the statutory maximum. This is so whether a court is determining whether a prior conviction was entered, or attempting to discern what facts were necessary to a prior conviction. In either case, the court is inappropriately finding a fact that must be submitted to the jury because it 'increases the penalty for a crime beyond the prescribed statutory maximum.'") (citations omitted).

To obtain a conviction, the prosecution must prove all the facts "necessary to constitute the crime" – *i.e.*, the elements of that crime – beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 363 (1970). Therefore, when a jury makes a finding of guilty with regard to a particular charge, it necessarily follows that the jury has found, as a matter

of fact, that the defendant committed the acts necessary to fulfill each element of the crime. However, the fact that the jury found an element satisfied says nothing about the specific facts the jury found to have satisfied that element.

For example, in *Omargharib v. Holder*, 775 F.3d 192 (4th Cir. 2014), an Egyptian citizen and lawful permanent U.S. resident, had been charged and convicted under the Virginia larceny statute for stealing two pool cues. The Department of Homeland Security sought his removal from the United States under the Immigration and Nationality Act ("INA"), which authorized removal upon commission of an "aggravated felony," a term the INA defined to include either a "theft offense," 8 U.S.C. §1101(43) (G), or a "fraud offense." 8 U.S.C. § 1101(43) (M)(i). The INA defined "fraud offense" in such a way as to exclude Omargharib's act, and the question whether Omargharib could be removed therefore turned on whether his state conviction had been for a "theft offense" under the INA. 775 F.3d at 194-95.

Although the unauthorized taking of two pool cues is clearly "theft," rather than "fraud," the jury's verdict did not require a finding that Omargharib had committed "theft" rather than "fraud." The Fourth Circuit held that because the elements of the Virginia statute could be satisfied with a jury finding of either theft or fraud:

> Under the categorical approach, it is . . . possible that Omargharib's grand larceny conviction rested on facts amounting to fraud, not theft. . . . And under the categorical approach, the [Immigration Judge] was not free to review the record to determine whether Omargharib's grand larceny conviction was based on theft, not fraud.

*Id.* at 195. *See also United States v. Royal*, 731 F. 3d 333 (4th Cir. 2013) (defendant's prior Maryland conviction for second-degree assault was categorically not a "violent

felony" under the ACCA because under Maryland law, "the completed battery form of second-degree assault may consist of *either* 'offensive physical contact' *or* infliction of 'physical harm'"). Thus, the categorical approach demands that courts "look only to the statutory definitions – *i.e.,* the elements – of a defendant's [offense of conviction] and not to the particular facts underlying [the offense of conviction]." *Descamps*, 133 S. Ct. at 2283 ([t]he key . . . is elements, not facts"). "What matters for the categorical approach is how the law defines the offense generically, and not the particulars of how an individual might have committed the offense on a given occasion." *United States v. Shell*, 789 F.3d 335, 338 (4th Cir. 2015).

### B. RICO Conspiracy is Not a "Controlled Substance Offense."

The "statutory definitions – *i.e.,* the elements – of" RICO conspiracy do not meet the definition of a "controlled substance offense." The question whether RICO conspiracy is a "controlled substance offense" turns on "whether the full range of conduct covered by [18 U.S.C. § 1962(d)], including the most innocent conduct," meets the definition of a "controlled substance offense." *Shell*, 789 F.3d at 339; *United States v. Torres-Miguel*, 701 F.3d 165, 167 (4th Cir. 2012). If any conduct prohibited by the statute does not constitute a "controlled substance offense" – *i.e.*, if the statute "sweeps more broadly" than the "controlled substance offense" definition – the statute categorically fails to qualify as a predicate for the career offender enhancement, because the jury's verdict is not necessarily based on its conclusion that the defendant committed the acts necessary to comprise a "controlled substance offense. *Omargharib*, 775 F.3d at 198.

To obtain a conviction for RICO conspiracy under 18 U.S.C. § 1962(d), the government must prove "the existence of a RICO 'enterprise' in which the defendant conspired to participate, and that the defendant conspired that a member of the enterprise would perform at least two racketeering acts constituting a 'pattern of racketeering activity.'" *United States v. Pinson,* No. 15-4311 (4th Cir., June 19, 2017), 2017 WL 2621764; *see also United States v. Cornell*, 780 F. 3d 616, 621 (4th Cir. 2015); *United States v. Mouzone*, 687 F. 3d 207, 218 (4th Cir. 2012). These elements obviously "sweep[] more broadly" than the definition of a "controlled substance offense" under U.S.S.G. § 4B1.2, which defines the term as a felony:

> that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G.§ 4B1.2(b). Section 1962(d) can be violated by individuals who conspire to commit predicate acts – such as mail or wire fraud and trafficking in contraband cigarettes, *see* 18 USC § 1961(1) – that have nothing to do with "the manufacture, import, export, distribut[ion], or dispens[ing]" of a controlled substance. Therefore, RICO conspiracy is categorically not a "controlled substance offense," and the enhancement under USSG § 4B1.1(a) is inapplicable.[4]

## II. The "Modified Categorical Approach" is Inapplicable Here.

The United States has asserted that, in determining whether the RICO conspiracy convictions in this case are "controlled substance offenses," the Court should not apply

the "categorical approach," but, instead, the "modified categorical approach," looking beyond the statutory elements of the offense to the particular facts of conviction. However, this approach applies only in a "narrow range of cases," where an offense is "divisible" – *i.e.,* where the offense has alternative elements, one of which constitutes a "controlled substance offense." *Descamps*, 133 S. Ct. at 2283; *Omargharib*, 775 F.3d at 198. The offense of conviction here – RICO conspiracy under 18 U.S.C. § 1962(d) – is not divisible, and, therefore, the modified categorical approach does not apply.

As discussed above, by limiting analysis to the elements of an offense, the categorical approach ensures that a defendant's sentence is enhanced only on the basis of facts found by the jury. *See* § I, *supra.* As a result, because the modified categorical approach "acts not as an exception" to the categorical approach, "but instead as a tool" for implementing it, the "modified categorical approach "retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime." *Id.* at 2285. The modified categorical approach applies to an offense "only if [the offense] is defined to include multiple alternative *elements* (thus creating multiple versions of a crime), as opposed to multiple alternative *means* (of committing the same crime)." *Omargharib v. Holder*, 775 F.3d 192, 197 (4th Cir. 2014) (citations omitted); *see also Descamps*, 133 S. Ct. at 2284-85 (modified categorical approach applies only where statute contains "multiple, alternative elements" creating "several different crimes").

The RICO conspiracy statute, 18 U.S.C. § 1962(d) lists multiple predicate acts that may form the basis of a violation of the statue, including a plethora of state and federal offenses that have nothing to do with controlled substances. For example, § 1961(1)

defines "racketeering activity" to include acts or threats involving murder, kidnapping, gambling, arson, robbery, embezzlement, extortion, fraud, interstate transportation of stolen property, and trafficking in counterfeit labels for phonorecords, to name a few. But these alternatives do not make the statute "divisible," and the modified categorical approach applicable, because "the requirements on either side of the 'or' [a]re 'merely alternative means of satisfying a single element' of [the crime], rather than alternative elements." *Omargharib*, 775 F.3d at 199.

Elements, as distinguished from means, are "factual circumstances of the offense" that must be specified in the charging documents, and which the jury must find unanimously and beyond a reasonable doubt. *Omargharib*, 775 F.3d at 198; *see also See Mathis v. United States*, 136 S. Ct. 2243, 2251-55 (2016) (defining elements as "the 'constituent parts' of a crime's legal definition – the things the prosecution must prove to sustain a conviction"). To sustain its burden of proof under 18 U.S.C. § 1962(d), the Government must prove only three elements – unanimously and beyond a reasonable doubt – three elements: (1) an "enterprise" affecting interstate commerce; (2) in which the defendant conspired to participate; and (3) the defendant's agreement that he or some other member of the conspiracy would commit at least two racketeering acts. *United States v. Pinson,* No. 15-4311 (4th Cir., June 19, 2017), 2017 WL 2621764; *see also United States v. Cornell*, 780 F. 3d 616, 621 (4th Cir. 2015); *United States v. Mouzone*, 687 F. 3d 207, 218 (4th Cir. 2012). *United States v. Mouzone*, 687 F.3d 207, 218 (4th Cir. 2012); *see also 2B Fed. Jury Prac. & Instr*. § 56:11 (6th ed.).[5] A RICO conspiracy charge

---

[5] Pattern jury instructions for an offense often will clarify whether a statute's terms are means versus elements. *United States v. Gardner*, 823 F.3d 793, 802 (4th Cir. 2016).

need not specify the predicate racketeering acts that the defendant agreed would be committed," *United States v. Cornell*, 780 F.3d 616, 625 (4th Cir. 2015), and "to convict a defendant of RICO conspiracy, the jury need not be unanimous as to the specific predicate acts that the defendant agreed someone would commit."[6] *United States v. Wilson*, 579 Fed. Appx. 338, 347 (6th Cir. 2014).

Therefore, the predicate acts underlying a RICO conspiracy charge are not alternative elements of the crime, but alternative means of violating a single element. The statute does not create multiple crimes; it provides multiple ways in which a single crime can be committed. In other words, once a jury determines that a defendant agreed that someone – not necessarily the defendant – would commit at least two racketeering acts, a jury need not agree on what those racketeering acts are. And because the alternative predicate acts are means, rather than elements, the modified categorical approach is inapplicable. *Descamps*, 133 S. Ct. at 2284-85; *Omargharib,* 775 F.3d at 197.

---

The pattern jury instruction for RICO conspiracy defines its elements as:

> One: A conspiracy or agreement, as detailed in the indictment, existed between two or more persons to participate in the affairs of an enterprise that affected interstate commerce through a pattern of racketeering activity; Two: Defendant … deliberately joined or became a member of the conspiracy or agreement with knowledge of its purpose; and Three: Defendant … agreed that someone, not necessarily the defendant, would commit at least two of the racketeering acts detailed in the indictment.

*2B Fed. Jury Prac. & Instr.* § 56:11 (6th ed.)

[6] In fact, "[t]here is no requirement of some overt act or specific act in the [RICO conspiracy] statute," and RICO conspiracy does not require proof of any overt act. *See Salinas v. United States*, 522 U.S. 52, 63 (1997).

Recently, in a case factually similar to this, the court in *Alvarado v. United States*, 2016 WL 6302517 (C.D. Cal. Oct. 14, 2016), held that the categorical approach, and not the modified categorical approach, applied in determining whether RICO conspiracy is a "crime of violence" under U.S.S.G. § 4B1.1(a)(2). In *Alvarado*, the defendant – who had two prior adult felony convictions that qualified as "crimes of violence" – pled guilty to RICO conspiracy, admitting that he "agreed with others to conduct and participate in [a gang that engaged in] . . . a pattern of racketeering activity," including "violent crimes and narcotics distribution." *Id.* *1. The sentencing court found him to be a "career offender" under § 4B1.1(a), doubling his sentence.

In *Alvarado*, however, the court vacated that sentence, rejecting the government's argument that the modified categorical approach applied, and that the particular facts of the defendant's offense rendered it a "crime of violence." The Alvarado court held that to be guilty of RICO conspiracy:

> [I]t suffices that [the defendant] adopt the goal of furthering or facilitating the criminal endeavor. He may do so in any number of ways short of agreeing to undertake all of the acts necessary for the crime's completion. One can be a conspirator by agreeing to facilitate only some of the acts leading to the substantive offense. It is elementary that a conspiracy may exist and be punished whether or not the substantive crime ensues.

*Id.* * 10 (quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997)). In other words, a RICO conspiracy may be based on an agreement that never results in the commission of any predicate act, or even any agreement as to which predicate acts the "enterprise" will commit. Therefore, RICO conspiracy "does not have as an element the use, attempted use, or threatened use of force, let alone the use, attempted use, or threatened use of physical force," and is not a "crime of violence" under § 4B1.1. *Id.* at *10. By the same

token, RICO conspiracy does not include as an element the facts necessary to comprise a "controlled substance offense" under U.S.S.G. § 4B1.2.

Respectfully submitted,

Date: 26 June 2017

/s/ Paul F. Enzinna
Ellerman Enzinna PLLC
1050 30th Street, NW
Washington, DC 20007
202.753.5553
penzinna@ellermanenzinna.com

*Counsel for Defendant Marty Imes*

Julie Marie Reamy
Bledsoe, Reamy & Ramirez, P.A.
One South Street
Suite 2125
Baltimore, MD 21202
410.605.5000
reamy@brrattorneys.com

*Counsel for Defendant Artie Bailey (1:16-cr-00485)*

Tonya Kelly Cronin
Biran Kelly LLC
201 N. Charles St. Ste. 2001
Baltimore, MD 21202
410.625.2500
tkelly@birankelly.com

*Counsel for Defendant Marcus Lisbon (1:16-cr-00485)*

David F. Mister
Mister Winter and Bartlett LLC
30 E. Padonia Rd. Ste. 404
Timonium, MD 21093
410.561.3000
dmister@mwblaw.com

*Counsel for Defendant Robert Costen (1:16-cr-00484)*

Harry J. Trainor, Jr.
Trainor Billman Bennett and Milko LLP
116 Cathedral ST. Ste. E
Annapolis, MD 21401
410.280.1700
htrain@prodigy.net

*Counsel for Defendant Travis Gie (1:16-cr-00484)*

Theresa Whalen
Law Office of Theresa Whalen
801 Wayne Avenue, Ste. 400
Silver Spring, MD 20910
301.588.1980
whalenesq@aol.com

*Counsel for Defendant Troy Johnson (1:16-cr-00484)*

Harry D. McKnett
The Law Office of Harry D. McKnett, LLC
5305 Village Center Drive, #241
Columbia, MD 20144
410.730.8737
hdmcknett@aol.com

*Counsel for Defendant Ternell Lucas (1:16-cr-00484)*

John Michael McKenna
Brennan McKenna Mitchell & Shay, Chartered
6305 Ivy Lane Ste. 700
Greenbelt, MD 20770
301.474.0044
jmckenna@bsm-legal.com

*Counsel for Defendant Michael Page (1:16-cr-00484)*

Richard C. Bittner
Law Office of Richard C. Bittner
7 Central Ave., Ste. 201
410.590.2552
richbittner@gmail.com

*Counsel for Defendant Kevin Thompson (1:16-cr-00484)*

**CERTIFICATE OF SERVICE**

      I certify that on 26 June 2017, a copy of the foregoing MARTY IMES' MEMORANDUM OF LAW AS *AMICUS CURIAE* IN SUPPORT OF MARCUS LISBON's ARGUMENT THAT THE CAREER OFFENDER ENHANCEMENT OF U.S.S.G. § 4B1.1 IS INAPPLICABLE TO A RICO CONSPIRACY CONVICTION UNDER 18 U.S.C. SECTION 1962(d) was filed using the CM/ECF system, which will then send notification of such filing to all counsel of record.

                                              Respectfully submitted,

                                              /s/ Paul F. Enzinna

Date: 26 June 2017                Ellerman Enzinna PLLC
                                              1050 30th Street, NW
                                              Washington, DC 20007
                                              202.753.5553
                                              penzinna@ellermanenzinna.com

                                              *Counsel for Defendant Marty Imes*